[L. A. No. 9507. In Bank.—April 1, 1931.]

CITY OF PASADENA (a Municipal Corporation), Respondent, v. NICK ESTRIN et al., Appellants.

Robert E. Austin, John N. Helmick and J. E. Stillwell for Appellants.

Harold P. Huls and R. C. McAllister, City Attorneys, and Frederick G. Stoehr, Assistant City Attorney, for Respondent.

THE COURT.—Both parties appeal from a judgment in favor of the plaintiff in the sum of $1884.83, on account of a quantity of seed potatoes sold and delivered by the plaintiff to the defendants.

In the year 1925 and for some time prior thereto the City of Pasadena, a municipal corporation operating under a freeholders' charter, owned a large tract of land outside its corporate limits, which tract was known as the "Pasadena City Farm". One B. C. Bougher, as superintendent, conducted the agricultural operations on the farm and in many instances carried on preliminary negotiations for the sale of the produce. On January 6, 1925, Bougher and the defendants signed the following instrument:

"January 6, 1925.

"We, the Liberty Produce Company agree to buy and the Pasadena City Farm agrees to sell up to and including 2000 sacks of No. 1 seed potatoes for a price of $2.25 per hundred pounds F. O. B. the Pasadena Farm. This seed to be delivered as dug during the latter part of January 1925 providing the weather permits digging.

"Terms: cash on demand. A deposit of $450.00 is hereby delivered and accepted as a guarantee of acceptance of this contract.

"Signed N. Estrin
"A Karl.
"Pasadena City Farms,
"Alhambra, California
"By B. C. Bougher—Supt."

No other or further contract was drawn. Pursuant to this instrument there were delivered to the defendants 103,770 pounds of potatoes, which at the price of $2.25 per hundred pounds named in this memorandum would amount in value to $2,334.83, and, deducting the $450 cash payment, would leave a balance unpaid of the amount of the judgment. The city brought suit setting forth two counts in the complaint. In the first count the execution of the instrument, the payment of the $450, and the balance due

of $1884.83 were alleged, followed by a prayer for payment of the balance due. In the second count the plaintiff sought to recover the market value of the potatoes, alleged to be the sum of $3,891.67, or at the rate of $3.75 per hundred pounds. The defendants answered admitting and alleging the execution of the foregoing paper, admitting the advance payment of $450, admitting the delivery to them of 103,770 pounds of potatoes, but denied any indebtedness to the plaintiff in excess of $135.83. It is then alleged that after the 103,770 pounds of potatoes had been delivered, and on January 31, 1925, said Bougher repudiated the contract and refused to deliver any more of the produce; that the market value of the potatoes at that time was $3.75 per hundred pounds; that by reason of such repudiation and refusal to deliver the defendants had been damaged in the sum of $1749, which amount was the difference between the sale price specified in the memorandum and the market value of the undelivered potatoes; and the defendants prayed that the amount of their alleged damage be set off against the amount admittedly owing to the plaintiff.

At the trial it was stipulated that the market value of the potatoes in January, 1925, was $3.75 per hundred pounds. The court found that the plaintiff was not bound by the contract of January 6, 1925, because of the charter limitations upon its power to contract. Notwithstanding the stipulation as to the market price, the court found the market value of the potatoes theretofore delivered to be $2.25 per hundred pounds. Judgment was entered accordingly.

Section 1 of article X of the city charter provides: "The City of Pasadena shall not be, and is not bound by any contract except as hereinafter provided, unless the same shall be made in writing by order of the Board of Directors and signed by the City Manager or some other officer in behalf of the City thereunto authorized by the Board of Directors. The approval of the form of all contracts by the City Attorney shall be endorsed thereon before the execution thereof." The exceptions referred to in the above quotation are not pertinent here.

On the defendants' appeal it is contended that the foregoing charter provision is not applicable to the execution of the alleged contract involved in this case for the reason that in dealing with the sale of the produce the city

was acting in a proprietary capacity and that in such matters its contracts should be tested by the rules of law applicable to contracts between private individuals. But such is not the case. The charter makes no distinction between contracts executed on its behalf, whether they be referable to the governmental or proprietary functions of the city, and we may make no such distinction. The charter is the fundamental law of the city and must be interpreted and enforced accordingly. The foregoing charter provision was enacted to protect the city and its taxpayers from unauthorized obligations. There is no allegation in the case of a compliance with the charter requirements, nor do the defendants make any pretense that an attempt was made to comply with them. This being so, the trial court properly found and concluded "that no contract was made between the City of Pasadena and any of the defendants".

It is too well settled to require an extended citation of authority that when, by charter or statute, the mode and manner in which contracts of a municipal corporation may be entered into is provided for and, as here, any other method is expressly or impliedly prohibited, no contract will be binding on the municipality unless made in the manner specified and no implied liability can arise from the benefits received thereunder; nor can the same be the subject of ratification or an estoppel *in pais*. (*Reams* v. *Cooley*, 171 Cal. 150 [Ann. Cas. 1917A, 1260, 152 Pac. 293], and cases therein cited.) The mode specified constitutes the measure of the power and persons dealing with a municipal corporation are chargeable with knowledge of the limitation of the authority of its officers and agents. (*Foxen* v. *City of Santa Barbara*, 166 Cal. 77. [134 Pac. 1142].)

The defendants rely upon the case of *Brown* v. *Town of Sebastopol*, 153 Cal. 704 [19 L. R. A. (N. S.) 178, 96 Pac. 363], and similar cases, in support of their contention that a contract of a municipal corporation, when exercising other than its governmental functions, is construed by the same rules that govern private parties. But in that case and others to like effect the court was careful to observe that such contracts, when so construed, must nevertheless be executed within the limits of charter powers of the municipality.

■ Because of the limitations of its charter the plaintiff was therefore not bound by the alleged contract, either expressly or by estoppel or ratification. It would necessarily follow that the plaintiff could not be held in damages for the alleged breach of the contract, and the appeal of the defendants is ineffectual.

■ But from the fact that the city could not be held liable on the contract it would not follow that the defendants could take the property of the city, appropriate it to their own use and be absolved from paying for it. In fact the defendants concede their indebtedness to the plaintiff. On their appeal they merely contend for the right of set-off of their claim for damages.

On the plaintiff's appeal it is contended that the measure of its right of recovery is the market value of the potatoes delivered to the defendants. It does not appear on what theory the trial court found the market value of the produce delivered to be $2.25 per hundred pounds when there was before it a stipulation that the market value thereof at the time the same was delivered was $3.75 per hundred, unless it was upon some theory of estoppel or because that was the price specified in the invalid contract. But since the city is not bound by the contract and is not estopped to deny its invalidity, as has been seen, we fail to discover upon what theory the contract may be deemed invalid and still be effectual for the purpose of fixing the price. Notwithstanding the alleged contract the city had the right under its general powers and its specific power to sue, to pursue the defendants for the value of the personal property delivered to and retained by them and no satisfactory reason has been advanced why the general rule as to market value should not be applied in this case. The finding of the court as to market value, in view of the situation, is not supported by the evidence. But it is unnecessary to reverse the judgment in order to correct the error. A jury trial was waived. Under the authority vested in this court by section 4¾ of article VI of the Constitution and by section 956a of the Code of Civil Procedure we find, in accordance with said stipulation, that the market value of said potatoes at the time of delivery was $3.75 per hundred pounds, or a total of $3,891.67 for the 103,770 pounds

delivered, of which total the sum of $450 has been paid. Other points made need not be discussed.

We conclude that the plaintiff is entitled to recover from the defendants named in the judgment the sum of $3,441.67, with interest thereon at the rate of seven per cent per annum from the thirty-first day of January, 1925.

It is therefore ordered that the judgment appealed from be modified by striking therefrom the figures $1884.82 and inserting in lieu thereof the figures $3,441.67. As so modified the judgment is affirmed.