116 F.3d 486
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
THREE VALLEYS MUNICIPAL WATER DISTRICT, a municipal water
district; Community Redevelopment Agency of the
City of Maywood, a public body,
corporate and politic, Plaintiffs,
and
CITY OF LAWNDALE, a municipal corporation; City of San
Marino, a municipal corporation; City of Palmdale, a
municipal corporation; The Community Redevelopment Agency
of the City of Palmdale, a public body, corporate and
politic, Plaintiffs-Appellants,
v.
E.F. HUTTON & COMPANY, INC., a Delaware corporation;
Shearson Leham Hutton Inc., a Delaware corporation; First
Investment Securities, Inc., an Arkansas corporation;
William E. Parodi, Sr.; Frederick W. Parodi; David J.
Lane, Todd Melillo; William F. Smith; Ed Ortiz,
Defendants-Appellees.
 No. 95-55818.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 9, 1996.
Decided June 20, 1997.
 
 1
 Appeal from the United States District Court for the Central District of California, No. CV-88-00322-JSL; J. Spencer Letts, District Judge, Presiding.
 
 
 2
 Before: HUG, C.J., PREGERSON and REINHARDT, JJ.
 
 
 3
 MEMORANDUM*
 
 
 4
 The Cities of Lawndale and Palmdale and the Community Redevelopment Agency for the City of Palmdale (collectively the "Cities") appeal the district court's order confirming an arbitration award in their favor against E.F. Hutton and Shearson Lehman Hutton ("Hutton"). The Cities contend first that the district court's order compelling arbitration of the claims against Hutton was erroneous because Raymond Wood, who opened the Cities' accounts with Hutton, lacked authority to execute account contracts that contained mandatory arbitration provisions. Secondly, the Cities contend that, if the order compelling arbitration is not reversed, the arbitrators' award should be vacated because the calculation of the award was fundamentally irrational and the arbitrators excluded material evidence. We have jurisdiction, 9 U.S.C. § 16(a)(1)(D) and 28 U.S.C. § 1291, and we affirm.
 
 Order Compelling Arbitration
 
 5
 We begin by noting that each of the Cities delegated to Wood "the authority to invest on [their] behalf...." The Cities' counsel admitted as much during the arbitration proceeding, and admissions are binding on municipalities. See e.g., Pinewood Investors v. City of Oxnard, 133 Cal.App.3d 1030, 1035 (Ct.App.1982). The Cities' respective conduct confirms that each delegated such authority. Lawndale, for example, executed a "trading authorization," which provided that Wood had "full authority and [is] empowered to enter into all transactions [on behalf of the City]...." Palmdale and the Community Redevelopment Agency each hired Wood to be their Director of Finance. In that position he headed their respective finance departments, which were responsible for investing excess funds. In light of these circumstances, it is apparent that the Cities delegated to Wood the actual authority to invest funds and open investment accounts on their behalf.
 
 
 6
 The question thus becomes whether, in delegating the actual authority to invest on their behalf, each municipality implicitly delegated the authority to bind it to an arbitration provision contained in a client agreement entered into pursuant to an exercise of the actual authority to invest excess funds. The Cities contend that California law requires an express delegation of the power to bind a municipality to arbitration. They rely on Tri-Cor. Inc. v. City of Hawthorne, 8 Cal.App.3d 134 (Ct.App.1970) and El Camino Community College Dist. v. Superior Court, 173 Cal.App.3d 606 (Ct.App.1985) as support for this proposition. A careful reading of those case, however, indicates that the Cities reliance is misplaced.
 
 
 7
 In Tri-Cor, a general contractor brought suit against the City of Hawthorne. Tri-Cor, 8 Cal.App.3d at 136. The parties discussed arbitration and Hawthorne's city attorney agreed to submit the claim to arbitration even though the contract between Tri-Cor and the city did not contain an arbitration clause. Id. Hawthorne later refused to submit the dispute to arbitration and the contractor moved for an order compelling arbitration. Id.
 
 
 8
 Hawthorne argued "that there was no agreement to arbitrate because ... the city attorney ... had no authority to bind the city to an arbitration agreement." Id. at 138. The court began by noting that Hawthorne had not expressly delegated such authority. Id. In the absence of an express delegation, the court looked to the authority inherent in the position of the city attorney. Id. Because the court concluded that the city attorney was not even authorized to appear and defend the suit against Hawthorne, it held that the city attorney lacked the authority to bind Hawthorne to arbitration. Id. at 139. The court thus expressly refused to determine whether a city attorney, if authorized to appear and defend a suit on behalf of a municipality, has the implied authority to bind the city to arbitration. Id. at 136. Tri-Cor is inapposite because the court expressly refused to address the implied authority question.
 
 
 9
 El Camino also sheds no light on the issue before us. In that case, the El Camino Community College District ("El Camino") brought a breach of contract action against Information Associates ("IA"), which moved to compel arbitration. El Camino, 173 Cal.App.3d at 609. After the trial court granted IA's motion, El Camino sought a writ of mandamus from the court of appeals. Id. at 610. At issue was whether El Camino was bound by an arbitration agreement signed by two of its vice presidents. Id. at 611.
 
 
 10
 The court of appeals held that El Camino was not bound by the agreement. Id. at 613. The court concluded that El Camino was not bound because its board of trustees did not approve of or ratify the arbitration agreement. Id. at 612. El Camino differs from the case at bar, however, because, although El Camino had delegated authority to contract to the two vice presidents, the delegation of authority was governed by a statute which provided that "no contract made pursuant to such delegation ... shall be valid ... against [El Camino] unless and until the same shall have been approved or ratified by [its board of trustees]...." Id. (quoting Cal. Educ.Code § 81655). In this case, none of the Cities' charters, codes or bylaws require that the entity approve or ratify a contract made pursuant to a delegation of power.
 
 
 11
 A case that is much more closely on point and which supports the district court's order compelling arbitration is City of Vista v. Sutro & Co., 52 Cal.App.4th 401 (Ct.App.1997). There, the City of Vista, by resolution, authorized its director of finance to "sign warrants, transfer or invest funds, and sell, assign and transfer securities, and take other actions deemed necessary to properly administer the funds of the City of Vista...." Id at 405 n. 1 (emphasis added). By expressly delegating to the director of finance the power to invest the City of Vista's excess funds, the City implicitly authorized the director to bind it to arbitration. Id. at 410.
 
 
 12
 Contrary to the Cities' argument, under California law a delegation of authority to bind a municipality to arbitration need not be express, but rather can be implied from a grant of authority to contract. Id. at 408, 410-11. Here, the Cities concede that they authorized Wood to invest on their behalf. Managing investments is a task that contemplates, if not requires, contracting with a brokerage house. Arbitration agreements commonly appear in contracts with brokerage houses. Hence, by expressly authorizing Wood to handle investments, the Cities implicitly authorized Wood to enter into a contract with a brokerage house that contained an arbitration clause or resolution of disputes. Id. at 410.[1]
 
 Validity of Arbitration Awards
 
 13
 The Cities also contend that the district court erred in confirming the arbitration award. The Cities ask us to set aside the award because the arbitrators (1) irrationally credited Hutton for commissions it had refunded; and (2) excluded relevant evidence.
 
 
 14
 We reject both of these arguments. The arbitrators awarded to each entity slightly varying compensatory damages of between $28,000 and $30,000, and $200,000 in punitive damages, but deducted an amount equal to the commissions previously refunded by Hutton (about $106,000 to each entity). The Cities contend that the $106,000 deduction was irrational. Whether the reduction was because the commissions were taken into account in calculating the loss or in mitigation of the punitive damage award is not specified. The arbitrator's calculation of damages did not, however, manifest a complete disregard for the law and, therefore, may not be set aside. See United Food & Commercial Workers Int'l Union v. Foster Poultry Farms, 74 F.3d 169, 173 (9th Cir.1995) (award must be confirmed if arbitrator even arguably construed or applied contract and acted within the scope of its authority).
 
 
 15
 The arbitrators exclusion of cumulative evidence did not deny the Cities a fair hearing and thus is not a basis for vacating the award. Robbins v. Day, 954 F.2d 679, 685 (11th Cir.), cert. denied, 506 U.S. 876 (1992). Accordingly, the district court's order is
 
 
 16
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The Cities raise several other arguments for reversing the district court. First, the Cities contend that Hutton, as a party contracting with a municipality, was charged with the duty to discover the authority of the municipal officers with whom it sought to contract. See e.g., City of Pasadena v. Estrin, 298 P. 14 (1931). This argument, however, misses the mark. Here, had Hutton conducted a thorough search of the Cities' records to determine the extent of Wood's authority, it would have discovered only that Wood was authorized to handle the Cities' investments. Their search would not have turned up, as the Cities' argument assumes, an ordinance or provision indicating that the City Council had to approve arbitration provisions
 Additionally, the Cities argue that Cal. Gov't Code §§ 53601 and 53635 invalidate municipal investments in reverse repurchase agreements unless the city's governing body approves the investments before they are made. While the statute currently requires the governing body's prior approval for such investments, Cal. Gov't Code § 53601 (West Supp.1996), the statute did not require prior approval when the Cities opened the accounts with Hutton. Cal. Gov't Code § 53601 (West 1983).
 Finally, the Cities argue that the arbitration provisions are unenforceable because their respective executive officers did not sign the account agreements. See Cal. Gov't Code § 40601 (West 1983). The cases cited by the Cities, however, all involved provisions in city charters, which specified that a contract with the city would be unenforceable unless it was in writing and signed by the mayor. See e.g., Estrin, 298 P. at 15-16.